## THE PHŒNIX BANK, Respondent, *v.* DANIEL P. STAFFORD et al., Appellants.

In an action by a firm creditor to reach lands purchased and paid for by S., a member of the firm, but conveyed to his wife with intent, as alleged, to defraud creditors, it appeared that such conveyance was made about four years prior to the contracting of the debt to plaintiff; that after payment for the lands, the price of which was $10,000, S. had several thousand dollars' worth of individual property, and, so far as appeared, owed no individual debts ; that the firm was entirely solvent and was doing a prosperous business. *Held*, that the evidence justified a finding that there was no fraud, and an affirmance of the validity of the conveyance.

(Argued May 31, 1832 ; decided June 13, 1882.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, made October 5, 1880, which reversed, on questions of fact, a judgment in favor of defendant, entered upon the report of a referee.

This action was brought by plaintiff to subject certain lands alleged to have been bought and paid for by Daniel P. Stafford,

but conveyed to his wife, the other defendant, in fraud of his creditors, to the payment of two judgments recovered by plaintiff on partnership obligations against the members of the firm of Stafford & Ellis.

That firm failed in December, 1874, and made a general assignment for the benefit of creditors.

The further material facts are stated in the opinion.

*S. N. Dada* for appellants. The husband is authorized to make a settlement of a suitable amount from his property upon his wife, if he has no dishonest purpose in view, and such settlement the law will protect. (*Hunt* v. *Johnson*, 44 N. Y. 27 ; *Carr* v. *Breese*, 81 id. 584.) The question of fraud is one of fact, often depending on conflicting evidence, on inferences to be drawn from surrounding circumstances. (12 Weekly Dig. 396.) The indebtedness sought to be declared a lien upon the real estate conveyed to the wife accrued so long a time after the conveyance to her that the presumption is in favor of the good faith of the transaction. The burden of proof is on the plaintiff and he must establish the fraudulent intent in the most satisfactory manner, and with reasonable certainty. (12 Weekly Dig. 570 ; 81 N. Y. 584.)

*C. W. Avery* for respondent. A fraudulent intent makes the conveyance void both as to existing and subsequent creditors of the firm. (*King* v. *Savage*, 11 Paige, 589 ; *Patridge* v. *Stokes*, 66 Barb. 586 ; 39 id. 164 ; *Carr* v. *Breese*, 18 Hun, 134.) The true rule as to fraudulency or fairness of a voluntary conveyance is founded on the pecuniary ability of the donor at the time of the gift to withdraw the amount of his donation from his estate without the least hazard to his creditors, or in any material degree lessening their prospect of prompt payment. (Bump on Fraudulent Conveyances, 291; *Carpenter* v. *Roe*, 10 N. Y. 227 ; *Babcock* v. *Eckler*, 24 id ; 623 ; *Cole* v. *Tyler*, 65 id. 73–77.) Subsequent insolvency before payment of debt is some evidence of insolvency when gift was made. (Bump on Fraudulent Conveyances, 294, 296, 299 ; *Savage* v. *Murphy*, 34 N. Y. 508 ; 18 Wend. 375–379 ;

39 N. Y. 170 ; 1 Hoff, Respts, 78–85–86 ; 12 Barb. 653–656 ; *Shand* v. *Hanley*, 71 N. Y. 319.)

PER CURIAM. The debts upon which the plaintiff's judgments were rendered were contracted in 1874. The conveyance to the wife of Stafford, one of the judgment debtors, was made September 21, 1870, and recorded November 21, 1870. The burden was upon the plaintiff to establish that this conveyance was procured to be made by the defendant, Daniel P. Stafford, to his wife, with intent to defraud his creditors. We think this intent is not satisfactorily established by the evidence. It is conceded that the husband paid the consideration of the conveyance. The purchase-price of the farm was $10,000. It does not appear that the husband owed any individual debts when the conveyance was made. He paid in property and securities, $8,000 at the time, and nearly the whole of the balance of the purchase-price within two years thereafter. It appears without contradiction that after paying the $8,000, he had other individual property worth several thousand dollars.

In December, 1874, when the firm of Stafford & Ellis failed, Stafford's individual debts amounted to $1,407.55. It does not appear when they were contracted. Only a few hundred dollars was realized by the assignee from Stafford's individual assets. How they had become reduced from 1870 to 1875 is not explained. It is clear from the evidence that the conveyance to Mrs. Stafford did not violate the rights of any individual creditors of her husband. This indeed is not claimed. The material point is, whether it was a fraud upon the copartnership creditors of Stafford & Ellis. It would materially aid in determining this question, if the financial condition of the firm in September, 1870, when the conveyance was made, could be definitely ascertained. In March, 1869, the nominal assets of the firm, as appears from an invoice of that date, were $13,-227.54, and the liabilities, $7,751.02. The assets consisted of merchandise, notes, accounts, etc., and the liabilities included an indebtedness of the firm to Stafford of $3,500, for goods turned over by him to the firm upon its organization in 1861. No invoice is shown for 1870. In March, 1871, the assets were

inventoried at $13,980.99, and in March, 1872, $14,970.51. It does not distinctly appear what the liabilities were in 1872, but it may be inferred from the evidence that (including the debt to Stafford) they were between $6,000 or $7,000.

It seems to be quite plain that the nominal assets in 1870 largely exceeded the firm liabilities. Although no invoice for that year is shown, it may be inferred from the evidence that the assets and liabilities in that year substantially corresponded with those of 1869 and 1872. It, was, therefore, quite material for the plaintiff to establish that the nominal value of the assets was not the real value, and that the excess of assets over liabilities was apparent only. The plaintiff gave proof tending to show that debts included among the assets of 1869 were either uncollectible, or had been paid, or were subject to offset, and that the goods were inventoried beyond their value. But we think that the plaintiff failed to impeach the correctness of the invoices to such an extent as to warrant the conclusion that the firm was not solvent when the conveyance to Mrs. Stafford was made, or to show facts justifying the inference that in making the conveyance, Stafford intended to defraud the firm creditors. It was affirmatively shown that the firm business was prosperous until 1873, and that it was seriously affected by the financial crisis of that and the succeeding year. The evidence of the witness Sweet, of alleged declarations of Stafford made in 1870, if credited, tended strongly to establish a fraudulent intent in respect to the conveyance to Mrs. Stafford. But his evidence was substantially contradicted by Stafford, and his relations with the latter had for several years been unfriendly. The referee was best able to judge of the credibility of the witnesses.

It would not be useful to state in further detail the facts bearing upon the issue of fraud. We think the conclusion of the referee, affirming the validity of the conveyance, is, on the whole, just, and warranted by the evidence.

The order of the General Term should be reversed, and the judgment of the referee affirmed, with costs.

All concur, except TRACY, J., absent.

Judgment accordingly.